1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

IN RE: BETSEY WARREN LEBBOS,

10
            Debtor.
11  _____/
U.S. TRUSTEE,
12                                      NO. CIV. S-09-1252 LKK

13          Plaintiff,

14     v.                                      O R D E R

15  BETSEY WARREN LEBBOS,

16
            Defendant.
17  _____/

18       This is an appeal from the bankruptcy court, in which the

19  debtor/appellant appeals two orders.  The first order denied

20  debtor's consolidated motion to transfer venue, dismiss her own

21  petition, and recuse the bankruptcy judge.  The second order

22  entered judgment, after trial, denying the discharge of debtor's

23  debts.  The court decides the appeal on the papers.  For the

24  reasons stated below, the appeal is denied and the orders of the

25  bankruptcy court are affirmed.

26  ////

                                  1

1

## I. STANDARD OF REVIEW

"The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." In re Strand, 375 F.3d 854, 857 (9th Cir. 2004) (citing Galam v. Carmel (In re Larry's Apt., L.L.C.), 249 F.3d 832, 836 (9th Cir. 2001)); see also In re Greene, 583 F.3d 614, 618 (9th Cir. 2009) (district courts and circuit courts use the same standard of review in reviewing bankruptcy court decisions), Fed. R. Bankr. P. 8013. "When there are two permissible views of the evidence, the trial judge's choice between them cannot be clearly erroneous." In re Baldwin Builders, 232 B.R. 406, 410 (9th Cir. BAP 1999). The court must accept the bankruptcy court's findings of fact unless "the court is left with the definite and firm conviction that a mistake has been committed." Greene, 583 F.3d at 618.

## II. BACKGROUND

This case arises from a voluntary bankruptcy petition filed on June 26, 2006. Four separate adversary proceedings have been filed connection with this petition, and the dockets in all five cases are voluminous. Moreover, the debtor has filed nearly a dozen appeals to the district court, together with further appeals to the bankruptcy appellate panel.

Much of this procedural history is irrelevant to the pending appeal. Nonetheless, an overview of the major facts facilitates understanding of the present motions.

////

**A.   Debtors' Practice of Law and "Lawyer Defend Yourself"**

As noted by the bankruptcy court, the debtor was formerly admitted to the California bar, but was disbarred in 1991.  See Lebbos v. State Bar, 53 Cal. 3d 37, 49 (1991).

More recently, and perhaps ironically, debtor operated a business titled "Lawyer Defend Yourself," which published a series of books apparently instructing attorneys in how to dispute allegations of misconduct.   In late 2005, debtor completed negotiation of a contract to sell this business.  Exhibit of Record ("ER") DD-250.  In July of 2006, debtor met with the buyer of this business in Redding, CA regarding the aftermath of this sale.

During this time, debtor was prosecuted for practicing law without a license, apparently in connection with the "Lawyer Defend Yourself" business.  See Appellant's Opening Br. at 10 n.4, ER DD 253-54.   This case was prosecuted in State court in San Jose. Debtor was convicted, and on July 13, 2006, she was sentenced to nine months of electronic monitoring "in San Jose."

**B.   Debtors' Residence**

Another thread woven through this case is debtor's migration around the state of California.   Debtor has provided conflicting statements regarding her residency.  At various points, she asserts that she has resided in southern California for some time.  See Bankr. Dkt. No. 349 (filed Aug. 14, 2007) (debtor asserts that she has resided in Long Beach, California for "over six years"), ER DD 287-90 (debtor states that she has lived in Los Angeles County for over four years).  Other statements contradict this; for example,

1   debtor stated on July 19, 2006 that she resided in Redding, CA.

2   ER DD, 243.  The briefing on this appeal does not reveal how debtor

3   came to be prosecuted in Santa Clara County.

4       To the extent that debtor's residence is pertinent to this

5   case, the bankruptcy judge determined that the debtor resided in

6   Redding, CA in the months prior to August 14, 2006.  On or around

7   that date, debtor moved to Santa Clara county, apparently in

8   connection with the state criminal conviction.  In Santa Clara,

9   debtor first moved to Saratoga, then moved to San Jose on December

10  1, 2006.  ER B-4.  On May 25, 2007, debtor moved to southern

11  California.

12  **C.   Debtor's Medical Condition**

13      A third major theme in this case is debtor's medical

14  condition.  Debtor claims to suffer from medical disabilities that

15  limit her ability to travel or to communicate over the phone.  The

16  Bankruptcy Judge observed that debtor was slow in providing

17  documentation of these problems.

18      Debtor contends that her "lungs closed down" on October 24,

19  2006, that her doctor prohibited her from traveling, and that she

20  promptly conveyed this information to the trustee.  Appellant's

21  Opening Br. at 10.  Debtor has not provided any documentation of

22  this communication.  On November 1, 2006, and again on November 27,

23  debtor filed documents complaining of her medical problems, but

24  debtor did not attach to these filings any communication from or

25  statement by a medical care provider.

26      The next filing regarding debtor's disability was filed

4

1  on February 14, 2007.  Debtor filed a document styled "Debtor's
2  Medical Report Indicating Impossibility of Performance," to which
3  she attached a letter from a treating physician stating that she
4  was unable to travel.  ER I, Bankr. Dkt. No. 154.  The bankruptcy
5  judge later properly characterized this letter as "hearsay and not
6  signed under oath."  Bankr. Dkt. No. 384, n.9, (Sept. 24, 2007),
7  quoted in Opening Br. at 15.  Debtor filed a similar letter from
8  another physician, which suffered from the same defects, on August
9  14, 2007.  Bankr. Dkt. No. 349.

10       Debtor did not provide admissible evidence of disability until
11  December of 2007.  At that time, she re-submitted the letters
12  previously filed by her two physicians, this providing a signed
13  declaration from each physician testifying to the letters'
14  authenticity.  ER J, Bankr. Dkt. No. 447 (Decl. of Dr. Torrano
15  filed Dec. 27, 2007); ER K, Bankr. Dkt. No. 423 (Decl. of Dr.
16  Ochsner filed Dec. 10, 2007).  Debtor also filed, at that time, a
17  document from the Social Security Administration indicating that
18  debtor was disabled.  ER L, Bankr. Dkt. No. 421 (filed Dec. 10,
19  2007).

20  **D.   Procedural History of the Underlying Bankruptcy Proceeding**

21       Having outlined the general background, the court turns to the
22  chronology of this case.

23       **1.   Initial Filing in Redding, CA**

24       On June 26, 2006, attorney Darryl Alvey, purportedly acting
25  on behalf of debtor, filed a chapter 7 bankruptcy in the Eastern
26  District of California.  Alvey testified that debtor signed the

1   petition and various other documents in his presence, that she

2   reviewed these documents and then signed a separate statement of

3   their correctness. Ex B, Bankr. Order filed Apr. 27, 2009, Banrk.

4   Dkt. No. 591, at 1-2. Debtor does not dispute that she conducted

5   some business with Alvey, but she now contends that Alvey

6   misrepresented the nature of the documents signed and their

7   relationship. Debtor relatedly contends that, contrary to Alvey's

8   testimony, an unidentified trustee forged and filed the petition.

9        After hearing testimony on the issue, the bankruptcy judge

10  credited Alvey's testimony and determined that debtor had signed

11  and authorized the petition. Id. Not only does Alvey's testimony

12  provide evidence supporting the bankruptcy judge's factual

13  determination and demonstrating an absence of clear error, but

14  other reviewing courts have already upheld this factual

15  determination. See In re: Betsey Warren Lebbos, No. Civ.

16  2:08-cv-00680, Orders filed Sept. 28, 2008 at 7-8 and Dec. 2, 2008

17  at 4 n.2 (E.D. Cal.)

18       **2.   Trustee's Requests for Production of Documents**

19       Linda Scheutte was appointed as the bankruptcy trustee.

20  Pursuant to 11 U.S.C. § 341(a), the trustee convened an initial

21  meeting of creditors. The debtor was required to appear at the

22  meeting and submit to examination by the trustee and creditors, 11

23  U.S.C. § 343, and also to submit to the trustee all recorded

24  information relating to the property of the estate, and a copy of

25  her most recent tax return. 11 U.S.C. §§ 521(a)(4), 521(e)(2)(A).

26  ////

6

1        The initial meeting was set for July 19, 2006.  In advance of

2   this meeting, the trustee requested that debtor either produce the

3   documents required by 11 U.S.C. § 521 or explain why the documents

4   were not in her possession and who else would have them.   These

5   documents included personal and business tax returns, tax returns

6   and trust documents for trusts for which she was a beneficiary,

7   trustee, or administrator, purchase documents for the sale of her

8   business, cancelled checks, and copies of documents regarding real

9   property transactions in which she had participated.    Debtor

10  appeared at this meeting, accompanied by her attorney Alvey, but

11  did not present any of the required documents.   Debtor explained

12  that some of them were in other parts of the state, requiring

13  travel to retrieve them.

14       Absent the documents, the trustee set a continued meeting for

15  October 18, 2006.  In advance of that meeting, on August 4, 2006,

16  debtor provided some, but not all, of the requested documents.  ER

17  G 35-38, Bankr. Dkt. 91, 36-37.  Debtor then moved to Saratoga, CA.

18  She did not attend the October 18 meeting.  The record suggests two

19  potential but unsatisfactory explanations for her failure to

20  attend.   First, debtor was on house arrest at the time of the

21  meeting.   In anticipation of this problem, the trustee's counsel

22  contacted the Santa Clara County Probation Department, and the

23  Department informed counsel that the terms of debtor's confinement

24  permitted her to travel to Redding for the October 18 meeting.  ER

25  ////

26  ////

1   DD 212, <u>see also</u> ER DD 206.[1]   Second, although debtor later

2   contended that her disability prevented her from traveling, debtor

3   has not identified any evidence in the record indicating that this

4   disability arose prior to October 24, 2010 (the date on which

5   debtor asserts that her "lungs closed down"), much less evidence

6   indicating that debtor communicated this disability to the trustee

7   or the court before that time.

8        After debtor failed to attend this second meeting, the trustee

9   continued the meeting numerous times, and debtor uniformly failed

10  to appear.   The details of these continuances are not relevant to

11  this motion.

12       **3.   Order of January 19, 2007**

13       After several continued meetings, Scheutte moved to compel

14  debtor to appear and produce the required documents.   On January

15  19, 2007, the bankruptcy court granted this motion, ordering debtor

16  to appear in Redding on February 21, 2007 and to produce all

17  requested documents that were in her possession, custody, or

18  control.   Bankr. Dkt. No. 122.

19       Debtor now asserts that this order was issued ex parte and

20  without notice.   The court rejects both assertions.   The motion was

21  

22       [1] In the appellee trustee's brief, the trustee discussed the
    above in connection with Lebbos's failure to appear at the February
23  21, 2007, meeting.   That is, the trustee contends that Lebbos
    explained her failure to attend *that* meeting by reference to house
24  arrest, but that at *that* time counsel learned that house arrest was
    no barrier.   However, the trustee has not identified any evidence
25  in the record indicating that these conversations occurred in
    connection with the Feb. 21, 2007 meeting.   The Trustee cites the
26  above exhibit, which plainly refers to the October 18 meeting.

heard on January 3, 2007.  At that time, debtor was represented by counsel (Alvey), although Alvey's motion to withdraw was pending before the bankruptcy court.[2]  At the hearing, debtor appeared both personally and through her counsel.  Bankr. Dkt. No. 107 (civil minutes).  Lebbos was served with this order at the address she provided to the court.  Id.

Debtor did not appear at the February 21st meeting.  A week prior, on February 14, 2007 she filed a "Debtor's Medical Report Indicating Impossibility of Performance," asserting that her health prevented her from traveling.  As noted above, this report was accompanied by a purported letter from a treating physician, but not by any declaration from the physician.  Ex. I, Bankr. Dkt. No. 154.

**4.  Order of May 10, 2007**

After debtor failed to comply with the January 19, 2007 order, the trustee moved under Fed. R. Bankr. P. 2004 to have debtor taken into custody and brought to Redding for an examination.  On April 25, 2007, the bankruptcy judge heard this motion, with debtor personally participating by telephone.  B-4.  Debtor reiterated her contention that her heart and lung disabilities prevented her from traveling to Redding.  Despite the fact debtor had not provided any admissible evidence of her disability and had refused to allow the trustee to contact the debtor's medical providers to verify the disability, the bankruptcy judge declined to order debtor to travel

[2] On January 18, 2007, the Bankruptcy Court granted Alvey's motion to withdraw as counsel for Lebbos.

1   to Redding, instead stating that the trustee would need to travel

2   to San Jose.  ER B-4.  During the April 25 hearing, the parties

3   discussed scheduling this examination for late May 2007.  <u>Id.</u>  At

4   that time, debtor did not indicate that she would be unavailable

5   during any time in May.

6        After the hearing, on May 10, 2007, the bankruptcy judge

7   ordered debtor to appear for examination in San Jose on May 31,

8   2007.  As with the prior orders, this order was served on debtor

9   at the address she had provided to the court.

10        On May 25, 2007, debtor filed a motion to quash the May 10

11   order.  Bankr. Dkt. No. 317, Ex. Q.  Debtor argued that she was

12   entitled to 30 days notice of any examination, that the order was

13   improper in light of the appeals of prior orders, and that the

14   court lacked authority to order this examination.  Beyond these

15   legal arguments, debtor asserted that the judge and trustee knew

16   that the debtor had planned to move from San Jose to Los Angeles

17   County before May 31 and that her disability prevented her from

18   attending any examination whatsoever.  The court did not respond

19   to this motion to quash prior to the scheduled examination.

20        On May 26, 2007, debtor sent a separate letter to the trustee

21   stating that debtor would not attend the examination, reiterating

22   some of the above.  Immediately thereafter, debtor moved from San

23   Jose to southern California, settling in Long Beach on May 31.  B-

24   5.  Unsurprisingly, debtor did not attend the May 31 examination.

25   **E.**     **Procedural History of the Adversary Proceeding**

26        Finally, the court reaches the adversary proceeding from which

1   this appeal is taken.  On February 7, 2008, the trustee filed a

2   complaint in a new adversary proceeding, arguing that the debtor's

3   failure to comply with the January 19 and May 10, 2007 orders

4   warranted denial of debtor's petition for discharge of her debts.

5   This adversary proceeding was assigned docket number 8-2072-D.

6        In this proceeding, the bankruptcy judge entered various

7   orders other than the two that are the subject of this appeal.

8   Debtor filed a motion to dismiss, which was denied in the spring

9   of 2008.  Debtor failed to file a timely answer, and the clerk of

10  the court entered a default judgment on June 5, 2008.  The next

11  day, Lebbos filed an answer and an "affidavit" seeking

12  disqualification of the bankruptcy judge, followed shortly

13  thereafter by a motion to set aside the default judgment. The judge

14  promptly denied the "affidavit" to disqualify and the bankruptcy

15  appellate panel declined to hear an interlocutory appeal of this

16  denial.  (June 18, 2008).  The trustee did not oppose the motion

17  to set aside the default, and the court set aside the default on

18  August 15, 2008.

19       The matter was set for trial for April 23, 2009. Appellee's

20  Br. 10, ECF No. 22. In an order filed Feb. 19, 2009, the bankruptcy

21  judge ordered the parties to file pretrial exhibit and witness

22  lists.  Debtor failed to file either.

23       On March 20, 2009, the debtor filed a consolidated motion to

24  change venue, disqualify, and continue trial.  Ex. W (8-2072-D,

25  Dkt. No. 59).  The court heard this motion on April 22, 2009, the

26  day before trial, and debtor personally telephonically appeared at

1   this hearing.  The bankruptcy court denied this motion and informed

2   debtor that trial would commence as scheduled the following day.

3   Minute order filed April 23, 2009. 8-2072-D, dkt. no. 73.  Debtor

4   appealed this on May 1, 2009, electing to appear before the

5   district court.  8-2072-D, Dkt. No. 78.

6       Debtor did not appear at trial.  On April 27, 2009, the

7   bankruptcy court entered a judgment in favor of the United States

8   Trustee, from which Lebbos appeals.  Id. at 11.

9       The judgment denied entry of a discharge for Ms. Lebbos,

10  pursuant to Bankruptcy Code Section 727(a)(6)(A), for willfully

11  failing to obey two orders of the bankruptcy court, and pursuant

12  to Section 727(a)(4)(D) for knowingly and fraudulently failing to

13  provide properly requested documents to the trustee. [A-1, B-2 ].

### III. ANALYSIS

15      The present appeal concerns the April 23 and 27, 2009 orders

16  filed in adversary proceeding 8-2072-D.  Accordingly, although the

17  debtor/appellant's briefs raise a multitude of issues, the court

18  discusses these issues only insofar as the pertain to the propriety

19  of the challenged orders.

20  **A.  Order of April 23, 2009 on Disqualification and Venue**

21      **1.   Disqualification**

22      Judges shall disqualify themselves in any proceeding in which

23  their impartiality might reasonably be questioned or where they

24  have a bias or prejudice toward a party.  28 U.S.C. § 455.  As an

25  initial matter, the court rejects appellant's contention that the

26  motion to disqualify should not have been heard by the bankruptcy

judge whom she sought to disqualify.  The Ninth Circuit has held that such a motion must be heard by the judge whose impartiality is being questioned.  In re Bernard, 31 F.3d 842, 843 (9th Cir. 1994).  On review, the question is whether a reasonable person would conclude that the judge's impartiality might reasonably be questioned.  U.S. v. Wilkerson, 208 F.3d 794, 797 (9th Cir. 2000). Appellant bears the burden of showing that the bankruptcy judge was not impartial.  First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 987 (9th Cir. 2000).

Here, the primary reason for seeking disqualification was dissatisfaction with adverse rulings against appellant.  Adverse rulings are not a proper ground for disqualification.  Liteky v. U.S., 510 U.S. 540, 555 (1994). By themselves, such rulings cannot show reliance on an extrajudicial source and only rarely show sufficient favoritism or antagonism to justify disqualification. Id.

Appellant contends that the bankruptcy judge has a disqualifying financial interest based on a quiet title lawsuit filed against him.  She claims that because she is a witness against him, he is financially interested in harming her.

The Bankruptcy Appellate Panel of the Ninth Circuit did not specifically address these claims but noted that the "bankruptcy court, in detailed findings of Fact and Conclusions of Law, addressed debtor's allegations of bias and prejudice one by one." Appellee's Index to Excerpts of the Record "UST-2." at 15-16.  In its memorandum decision of June 18, 2008, the bankruptcy court

references previous requests by appellant for disqualification but rests its decision on its conclusion that the motion was "grounded on the defendant's dissatisfaction with the court's prior rulings in the parent case and in <u>Schuette v. Lebbos</u>." <u>U.S. Trustee v. Lebbos</u>, Adv. Pro. No. 08-2072-D, 1-2 (Bankr. E.D.Cal., June 18, 2008).  A minute order of April 23, 2009, denied the motion to disqualify, referencing findings and/or conclusions stated orally on the record.  Appellant's Appendix to Opening Brief "Z-187."  The transcript of this proceeding shows that Lebbos raised the issue of a personal liability suit against the bankruptcy judge, and that the judge acknowledged that he and another bankruptcy judge had been named in a suit brought by an attorney who was one of appellant's witnesses.  Appellant's Appendix to Opening Brief "FF-299-303."   The bankruptcy judge went on to point out that the action had been dismissed by a federal district court, although it was being appealed (but not stayed pending appeal), and that under the law in this circuit a judge is not disqualified in a matter by having a party file suit against them.  <u>Id.</u> at "FF-303-304.";  <u>U.S. v. Studley</u>, 783 F. 2d 934, 940 (9th Cir. 1986).

Reviewing the facts, the court believes that a reasonable person would not question the bankruptcy judge's impartiality in this case.  Accordingly, the court finds no clear error in the denial of the request for disqualification.

### 2.  Venue

Appellant appeals from the order of April 23, 2009, denying her motion to change venue.  Venue is not a jurisdictional

14

1   requirement, and therefore is subject to waiver.  <u>Neirbo Co. v.</u>
2   <u>Bethlehem Shipbuilding Corporation</u>, 308 U.S. 165, 167-168 (1939);
3   Fed. R. Civ. P. 12(b).  The decision of a party to plead a case on
4   the merits, which is made through the filing of a claim, waives the
5   party's right to object to venue.  <u>St. Louis & S.F. Ry. Co. v.</u>
6   <u>McBride</u>, 141 U.S. 127, 131 (1891); <u>In re Fishman</u>, 205 B.R. 147, 149
7   (Bankr. E. D. Ark. 1997).

8        Appellant voluntarily filed her initial bankruptcy petition
9   in the Eastern District of California.  While she alleges that the
10  petition was filed without her authorization, the court has found
11  no clear error in the bankruptcy court's finding of fact that the
12  petition was filed on her behalf. The filing of the petition in the
13  chosen venue operated as a waiver of appellant's right to object
14  to alleged improper venue in the bankruptcy proceeding. <u>See</u> 28
15  U.S.C. § 1406(b). Further, proceedings related to the initial
16  bankruptcy case are proper in the district court in which the
17  bankruptcy case is proceeding. 28 U.S.C. § 1409(a).

18       Regardless of proper or improper venue, a debtor's case may
19  be transferred to another district if the court determines that
20  doing so serves the interest of justice or convenience of the
21  parties.  Fed. R. Bankr. P. 1014(a)(1); 28 U.S.C. § 1412.  Under
22  Section 1412, the analysis of the combination of the interests of
23  justice and convenience of parties is inherently factual and
24  entails the exercise of discretion.  <u>In re Donald</u>, 328 B.R. 192,
25  204 (9th Cir. BAP).  This analysis considers the totality of the
26  circumstances, including the proximity of creditors to the court,

1  proximity of debtor, proximity of witnesses necessary to
2  administration of the estate, location of assets, economic and
3  efficient administration of case, and need for further
4  administration if liquidation ensues.  Id.  The bankruptcy court
5  used these factors.  With regard to proximity of creditors, at
6  least three of appellant's listed unsecured creditors were located
7  outside both districts.  The only creditor that had filed a claim
8  was located in the Eastern District, and thus this factor supported
9  retaining jurisdiction.  Debtor's proximity to the court was
10 reflected by her listing of her residence address in Redding on her
11 petition.  While she claims that she did not review the petition,
12 the bankruptcy court found as a fact that she did, a finding for
13 which the court finds no clear error.  Her statement of financial
14 affairs revealed a business address maintained in Redding from 1989
15 through 2006.  Thus the bankruptcy court's finding that there was
16 conflicting evidence of her residence was not clear error.  The
17 assets included property in Southern and Northern California, with
18 the trustee still investigating the extent of assets, and thus this
19 factor did not weigh in favor of transferring or retaining the
20 case.  The economic administration of the estate weighed heavily
21 in favor of retaining the case because of the trustee's substantial
22 work and substantial administrative expenditures.  Bringing a new
23 trustee up to speed would be expensive and duplicative for the
24 estate.  None of the factors weighed in favor of debtor.

25      Accordingly, the court finds no clear error in the denial of
26 appellant's motion to change venue.

1

2  **B.    Order of April 27, 2009 Denying Discharge of Debt**

3        Appellant appeals from the order of April 27, 2009, denying

4  the discharge of her debt.  Although debtor failed to appear at

5  trial, this order was on the merits, rather than as a default.

6        The bankruptcy court denied the discharge on the basis that

7  appellant knowingly and willfully violated two of its orders.

8  Appellant's Appendix to Opening Brief "B-5."  Under the Bankruptcy

9  Code, "[t]he court shall grant the debtor a discharge, unless . .

10  . the debtor has refused, in the case to obey any lawful order of

11  the court, other than an order to respond to a material question

12  or to testify . . ."  11 U.S.C. § 727(a)(6)(A).  Debtor argues both

13  that the bankruptcy judge's orders were unlawful and that her non-

14  compliance was not a refusal to testify.  The court addresses these

15  arguments in the context of the two orders at issue.

16        **1.    Debtor's Violation of the Orders of January 19 and May**

17              **10, 2007**

18              **a.    Lawfulness of the Orders**

19        Debtor argues that the order was unlawful because of lack of

20  notice and because it violated the Rehabilitation Act. Debtor's

21  notice argument is refuted by the record. The orders were issued

22  following noticed hearings, which debtor attended. The orders were

23  also properly docketed and served on debtor.

24        Debtor also argues that the January 19, 2007 order which

25  directed debtor to appear at a meeting in Redding on February 21,

26  2007, violated the Rehabilitation Act 29 U.S.C. § 701 et. seq. The

Rehabilitation Act prohibits federal programs from discriminating against the disabled. At the time of the January order, debtor had not offered any admissible evidence of her disability, although she later submitted a "Debtor's Medical Report Indicating Impossibility of Performance," which stated that debtor could not travel. Debtor did not attend the February 21, 2007 meeting. Although the trustee moved to have debtor taken into custody for the purpose of conducting a meeting in Redding, the bankruptcy judge declined to do so, and instead issued the May 10, 2007 order, directing the trustee to travel to San Jose where debtor was residing at the time to conduct an examination on May 31, 2007, so that debtor would not have to travel. During the hearing preceding the May 10 order, debtor did not indicate that she would be unable to attend a meeting in San Jose on May 31, 2007. Five days before the scheduled meeting in San Jose, debtor informed the court that she had moved to southern California and could not attend the meeting in San Jose. Debtor moved to Long Beach on May 31, 2007, the day of the scheduled meeting in San Jose.

Without concluding that the Rehabilitation Act applies to these facts, this court recognizes that debtor suffered no adverse consequence as a result of the bankruptcy judge's January 19, 2007 order. To the contrary, the bankruptcy judge attempted to accommodate debtor's needs by rescheduling the meeting at a location that did not require debtor to travel. Additionally, debtor did not ask for any accommodation with respect to the May 10 order. The January 19 and May 10, 2007 orders were therefore not

1  unlawful under the Rehabilitation Act.

2  **b.   Debtor's Refusal to Comply with the orders**

3  The Fourth Circuit has explained that "[t]he term used in §
4  727(a)(6)(A) is 'refused' not 'failed.' Accordingly, the Court must
5  find that the Debtors' lack of compliance with the relevant court
6  order was willful and intentional." <u>Smith v. Jordan (In re Jordan)</u>,
7  521 F.3d 430, 433-434 (4th Cir. 2008) (internal quotations
8  omitted).

9  Debtor clearly failed to attend either of the meetings ordered
10  by the bankruptcy judge. The question is whether she 'refused' to
11  attend. The bankruptcy judge, after assessing the credibility of
12  the witnesses and reviewing the evidence, concluded that debtor
13  "knowingly and willfully violated the court's orders of January 19,
14  2007 and May 10, 2007, by failing to appear at two examinations and
15  continually failing to produce books and records requested by the
16  trustee." Judgment  April 27, 2009. Upon review, this conclusion
17  by the bankruptcy judge is plausible. "When the bankruptcy court's
18  weighing of the evidence is plausible in light of the record taken
19  as a whole, a finding of clear error is precluded, even if we would
20  have weighed the evidence differently." <u>In re Bradley</u>, 501 F.3d 421
21  (5th Cir. 2007); <u>see also</u>, <u>In re Soliman</u>, No. 2:07-cv-469-GEB (E.D.
22  Cal. 2008) (upholding denial of debtor's discharge when "debtor has
23  not shown [that] the bankruptcy court's findings that he knowingly
24  and fraudulently withheld . . . [documents] from the trustee...were
25  not plausible in light of the record viewed in its entirety.") In
26  this case, this court finds no clear error in the bankruptcy

1 | judge's finding that debtor willfully and knowingly violated the
2 | court's orders. The bankruptcy judge's denial of debtor's discharge
3 | was therefore proper.

**IV. CONCLUSION**

4 |
5 |     For the reasons stated above, appellant's appeal is DENIED.
6 |     IT IS SO ORDERED.
7 |     DATED:  October 5, 2010.
8 |
9 |
10 |                         LAWRENCE K. KARLTON
11 |                         SENIOR JUDGE
                            UNITED STATES DISTRICT COURT
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |